S. F. BOWSER & COMPANY, INC., Appellant, *v.* HENRY A. McCOR-MACK and Another, Respondents.

Fourth Department, July 1, 1930.

*Averill & Tompkins* [*Robert Averill* of counsel], for the appellant.

*Hamlet A. Smyth*, for the respondents.

CROSBY, J. Plaintiff, appellant, brought this action to recover the balance of the purchase price of a so-called " oil fountain," which consisted of a series of storage tanks to be located inside defendants' service station and connected, by underground pipes, with a structure out of doors, called the fountain, where the oil was drawn near the customer to be served. The storage tanks and the fountain were furnished by the plaintiff, and defendants furnished the piping to connect the tanks with the fountain, and defendants also did the work of installation. Concededly there were no defects in the materials furnished by plaintiff, and concededly there was no fault with the manner of installation.

The defendants made an initial payment of $65.10 on the day of the sale, and, by the terms of the contract of sale, the $581 balance of the purchase price became due on May 7, 1928, when defendants defaulted in the payment of the installment then coming due.

The answer of defendants sets up, by way of counterclaim, a breach of express warranty as well as a breach of implied warranty of fitness for the purpose for which the fountain was intended.

Under this counterclaim the jury awarded to defendants a verdict for the down payment made by them, plus the cost of installation. No fault is found with the amount of this verdict, provided defendants were entitled to recover on their counterclaim.

The fault that defendants find with the fountain is that oil will not, during the cold winter months, flow through the underground pipes and out through the spigots. An air pressure pump, furnished by defendants, was used to force the oil from the tanks through the pipes and out through the spigots. During cold weather the oil would not flow to advantage, even under pressure.

The written contract of sale contains no warranty that the oil will flow properly in cold weather. The only express warranty in the contract is that the materials are free from defects in materials and workmanship, and no such defects are claimed by defendants. The written contract contains a stipulation that " it covers all agreements between parties hereto relative to this transaction, and that [plaintiff] shall not be bound by any representation or promise made by any agent relative to this transaction which is not embodied herein."

Defendants offered to prove oral representations by plaintiff's agent that the oil would flow in the coldest weather. The trial court properly held that, under the clause of the written contract above quoted, defendants were precluded from reliance upon any express oral warranty. But the court also held that all these oral representations might be proven by defendants, together with all the talks between defendants and plaintiff's agent, for the sole purpose of showing that defendants made known to plaintiff the particular purpose for which the fountain was required, and relied on plaintiff's skill and judgment in relation thereto, and then submitted to the jury the question of implied warranty arising from such proof. (Pers. Prop. Law, § 96, subd. 1, as added by Laws of 1911, chap. 571.) In this, too, we think the trial court was quite right. Implied warranties may arise under written, as well as oral, contracts. (See *Carleton* v. *Lombard, Ayres & Co.*, 149 N. Y. 137.) That case holds, however, that parties may so frame their contracts as to preclude implied warranties. The question here is — does the stipulation , that the written contract " covers all *agreements* " between the parties preclude implied *warranties?* We think not. We are persuaded that the implied warranty is not a part of the agreement, although necessarily connected with it. As was said in the opinion in *Matter of Casualty Co.* [*Bliss Co. Claim*] (250 N. Y. 410), the implied warranty " enters into or attends the contract " (p. 416). And in *Oetjen* v. *Whitehead Metal Products Co., Inc.* (126 Misc. 369) it was stated that " the statute itself fastens the implication upon the

transaction." (See, also, *Dexter & Carpenter, Inc.,* v. *Bliss Buildings, Inc.,* 123 Misc. 379, and *Cohan* v. *Markel,* 215 App. Div. 435.) Still the implied warranty is not an integral part of the agreement that gives rise to it. The following is the language of the opinion in *Hoe* v. *Sanborn* (21 N. Y. 552, 559), in speaking of implied warranties: " The civil law holds that the warranty enters into and forms an integral part of the contract of sale itself. * * * But the common law with, as I conceive, better logic, derives the obligation from the general doctrine which holds vendors responsible for every species of deception." This is another way of saying that the implied warranty, instead of being a part of the contract to which it attaches itself, is the law's contribution to the welfare of the parties beyond the terms of the contract itself. Or, to put it another way, the implied warranty is not read into the contract as a part and parcel thereof, but is a legal fiction invented to prevent the seller from loading a fraud onto a contract which, by its terms, would not be able to combat the fraud.

We come now to another serious question. In order to succeed on the theory of an implied warranty, the defendants must have established two things: (1) That they made known to plaintiff the particular purpose for which they wanted the oil fountain, that is, that they wanted something that would make frozen oil flow freely in cold weather, and (2) that they relied on plaintiff's skill and judgment in furnishing a fountain that would serve that purpose. Under the proofs disclosed by the record in this case, and the inferences that must be drawn from those proofs, we hold, as a matter of law, that defendants, in the business of handling oil in this climate, did not rely, and could not have relied, upon plaintiff's skill and judgment. Defendants should know, as well as plaintiff or anybody else, what frozen oil will do when it is sought to make it flow through frozen pipes in cold weather.

The judgment entered upon the verdict for the counterclaim should be reversed on the law and facts, and judgment rendered in favor of the plaintiff and against the defendants for the amount demanded in the complaint, namely, for $581 and interest from May 7, 1928, with costs.

All concur. Present — SEARS, P. J., CROUCH, TAYLOR, EDGCOMB and CROSBY, JJ.

Judgment and order reversed on the law and facts, with costs, and counterclaim dismissed, and judgment directed for the plaintiff for the sum of $581, with interest thereon from May 7, 1928, with costs.