STATE OF MISSOURI at the relation of JONES STORE COMPANY, a Corporation, Relator, v. HOPKINS B. SHAIN, EWING C. BLAND and NICK T. CAVE, Judges of the Kansas City Court of Appeals.—No. 38646.—179 S. W. (2d) 19.

Court en Banc, March 6, 1944.

Rehearing Denied, April 3, 1944.

*John A. McGuire, Clay C. Rogers* and *Mosman, Rogers, Bell & Conrad* for relator.

632

*John C. Nipp, E. E. Thompson* and *Alfred H. Osborne* for re-
spondents.

LEEDY, J.—Original proceeding in certiorari to review, for alleged conflict, the opinion of the Kansas City Court of Appeals in Marra, plaintiff-respondent, v. Jones Store Co., defendant-appellant, 170 S. W. (2d) 441. The action is one for damages for breach of an implied warranty in the sale of a colored blouse by relator to plaintiff. Plaintiff recovered judgment for $3,000.00, which, on appeal, was affirmed by the respondents, one judge dissenting.

Relator claims conflict in the holding that there was an implied warranty of suitability, and in the further holding that the evidence was sufficient to establish a breach of such warranty. The facts for our consideration are taken from the opinion as follows: Jones Store Co., is a department store at which the plaintiff, Marra, on October 27, 1938, purchased for her own use, a colored satin blouse, paying therefor the sum of $1.95. The blouse was wrapped in a package and delivered to plaintiff; she took it home with her, and immediately took it out of the wrapping and put it on a hanger in the clothes closet where it did not come in contact with any other clothing or object. She wore the blouse all day at her work as a clerk on November 11, 1938. In the afternoon she noticed an itching sensation around her neck and arms, and when she got home and took the blouse off, the dye had faded on her arms and undergarment at her arm pits. It itched and would not wash off. She did not wear the blouse again, but on the next day tiny red pimples appeared over her arms and some on her neck and shoulder. Her physician diagnosed her condition as infectious dermatitis, a condition of inflammation of the skin caused by infection and irritation. The physician's conclusion was that there must have been some poisonous or irritating substance in the blouse, although as to what substance, he had no idea. Relator had bought hundreds of such blouses from the New York firm which manufactured the particular blouse in question, and never had any other complaint. There were no defects discernible in the blouse, and nothing in its appearance which indicated in any way that it would be harmful to any person wearing it.

In considering the question as to whether there was an implied warranty that the blouse would be suitable for personal wear by the plaintiff, it should be noted that it appears from the opinion that the relator was not the manufacturer or producer of the article sold to the plaintiff, but was a retailer; that the alleged harmful quality

in the article was a latent defect unknown to the relator, and that an inspection of the blouse would not have disclosed any defect.

Relator claims that the opinion conflicts with Lindsay v. Davis, 30 Mo. 406, involving a latent defect in a horse, which states the following general rule of caveat emptor applying to the sale of personal property: "The maxim that a sound price implies a sound commodity, although a favorite one in the civil law, and occasionally borrowed to settle questions under our system, has never met with general favor, or taken root as a permanent part of the common law. Our law is, that the buyer takes the risk of quality and condition, unless he protects himself by a warranty, or there has been a false representation fraudulently made by the vendor." This decision was cited and the rule of caveat emptor reaffirmed in the more recent case of Barton v. Dowis, 315 Mo. 226, 285 S. W. 988, 51 A. L. R. 494, which will be hereinafter discussed.

Respondents claim that conflict with the foregoing rule is avoided by an exception announced in Hunter v. Waterloo Gasoline Engine Co., (Mo.) 260 S. W. 970. In that case it was held that there is ordinarily no implied warranty of suitability in the sale of merchandise by a retailer, but there is an exception where the vendor "undertakes to supply an article for a particular purpose, knowing that the buyer trusts to his judgment that the article is suitable for that purpose." Respondents claim their opinion is in accord with said ruling, and relator asserts it is not. Plaintiff's petition alleged that she purchased the garment "for her own use as wearing apparel." The opinion states, "Plaintiff testified that at the time of such sale she inquired whether or not the blouse would fade or shrink and was told that it would not, and that it was guaranteed fast color. . . . Plaintiff desired a blouse of her own size and for her own use. Defendant's clerk was so informed." This is the only evidence disclosed in respondents' opinion which is available to distinguish this case from an ordinary retail sale, if it can be so distinguished.

The theory of plaintiff is expressed in the opening paragraph of her instruction, approved by respondents, as follows: "The court instructs the jury that where an article of clothing is purchased from the seller for individual wear there is an implied warranty by law that the article so purchased is reasonably fit for its intended purpose." Respondents' theory is that if a customer states that the merchandise is being purchased for her own use, the above-mentioned exception to the general rule of caveat emptor becomes applicable. This appears not only from respondents' approval of the above-mentioned instruction, but from the following language of the opinion: "Plaintiff desired a blouse of her size and for her own use. Defendant's clerk was so informed. The blouse was made and adapted for but one use and that was for someone to wear, and it is apparent that both parties at the time of the sale had in contemplation that plaintiff was

purchasing the blouse for the particular purpose of wearing apparel for herself.''

We think the effect of this ruling is to change an ordinary retail sale without warranty into a special one importing warranty, if the purchaser merely mentions that she is purchasing clothing for her own use—a saucepan for cooking, or a chair for use in her home. The retailer would, of course, assume that such was the purpose without any such statement. If granite flakes off the saucepan, is the question of warranty or no warranty to depend upon whether the housewife told the dealer that she intended to cook with it? We think such a ruling is in conflict with decisions of this court.

In Hunter v. Waterloo Engine Co., supra, this court held that there was an implied warranty of suitability in the sale of a tractor by a dealer, but emphasized that the dealer had specially agreed to stand back of whatever representations had been made by the agent of the manufacturer. It appeared that in the discussions between the purchaser and said agent, the purchaser had pointed out his special requirements in connection with a large farm, and the agent had represented that the tractor would do certain specifically designated work for that particular farm. It was held that there was an implied warranty which was breached when the tractor purchased proved inadequate to do such work. The determination of whether or not there was an implied warranty was stated as follows: ''We think appellant's evidence tended to make a case where the seller contracted to furnish an article for a particular purpose, the buyer trusting to the judgment of the seller that the article is suitable for that particular purpose, rather than a case where the buyer contracted for a definite, known, and described article and relied upon his own judgment of its suitability for such purpose.'' Under this holding, the factors required were (1) the seller undertaking to furnish for a particular purpose, and (2) the buyer relying on the seller's judgment. This is quite different from the purchaser merely confirming the assumption of the retailer's clerk that the purchaser intends to use the article purchased.

The term ''particular purpose,'' as used in the Hunter case, means a special purpose as distinguished from the ordinary use of the article in question. The intended use was a very special one in that case, and was likewise quite special in the case of Busch & Latta Painting Co. v. Woermann Construction Co., 310 Mo. 419, 276 S. W. 614, involving a special scaffold constructed for a particular painting job, where the rule of the Hunter case was quoted with approval.

In the case at bar, the intended use by plaintiff was not a special one. The blouse in question was made by the manufacturer and offered for sale by the retailer for the obvious purpose that it be worn by a woman. The fact that the blouse was to be worn by plaintiff, the person who made the purchase, rather than by some

other woman, made it neither more or less adapted for use as wearing apparel. The only thing "particular" or "special" about the use by plaintiff as distinguished from any other woman intending to wear the blouse (aside from questions of personal taste which are not here involved) is the matter of size. It may well be that there was an implied warranty that the ▆▆▆ blouse would fit plaintiff, or if plaintiff asked for a particular numbered size, that the blouse was of that size. The conversation between plaintiff and the retailer's clerk may also have given rise to a warranty that the blouse would not shrink or fade, and that the color would not run. But such limited warranties, if any there were, cannot be extended to a warranty that the blouse contained no harmful ingredients. Such a ruling would be in conflict with Barton v. Dowis, supra, which involved the sale of hogs of a special strain for breeding purposes, which proved to have a latent defect in that they were cholera carriers, and transmitted cholera to other hogs owned by the plaintiff. The decision in that case recognized the general rule of caveat emptor set forth in Lindsay v. Davis, and the exception stated in the Hunter case. But it held that the implied warranty that the hogs would be suitable for procreating a particular strain could not be extended to the latent defect that they were cholera carriers, which would be covered by the rule of caveat emptor. Of course, cholera transmitting tendencies would be a serious latent defect in a breeding hog but not more so than in any other hog. So, in the present case, harmful ingredients in the blouse would make the garment undesirable for use by the plaintiff, but no more so than for the use of any other woman. Her use was an ordinary use, and not special.

The cases of Gibbs v. General Motors Corp., 350 Mo. 431, 166 S. W. (2d) 575, and Shroder v. Barron-Dady Motor Co. (Mo.), 111 S. W. (2d) 66, must be considered together. The Shroder case involved a personal injury sustained by a prospective customer who was making his own demonstration of an automobile furnished by the dealer. This decision in itself is not in point because it was based on the theory of negligence in failing to discover and correct a defective condition of the brakes, and there had been no actual sale. However, in the subsequent Gibbs case, the plaintiff's petition, which was held subject to demurrer, was based on the theory of implied warranty as well as negligence, and the accident from alleged defective brakes occurred after the dealer had made the sale. The opinion of this court holds that the ruling in the Shroder case to the effect that the dealer could not be held liable for latent defects not discoverable by reasonable inspection was applicable also to the allegations of the petition in the Gibbs case. There was no direct allegation that the plaintiff told the dealer she intended to drive the car, but this may be inferred from allegations as to directions of the dealer in regard to servicing the car.

Having found that the opinion of respondents is in conflict with our decisions in holding that an implied warranty arose, we deem it unnecessary to determine whether there was any conflict in the holding that the evidence was sufficient to establish a breach of such warranty. For the reasons stated, the opinion should be quashed. It is so ordered. All concur except *Gantt, J.,* absent.