John R. ALBERT, Doing Business As
Albert Tool and Gage Company,
Appellant,

v.

KOPPLIN MOLDING CORPORATION,
a Missouri Corporation, Appellee.

No. 15631.

United States Court of Appeals
Eighth Circuit.

Aug. 8, 1957.

Rehearing Denied Sept. 6, 1957.

---

Victor Packman, St. Louis, Mo. (Irl B. Baris, St. Louis, Mo., was with him on the brief), for appellant.

Michael J. Doherty, St. Louis, Mo. (Louis M. Kohn, St. Louis, Mo., was with him on the brief), for appellee.

Before GARDNER, Chief Judge, and VOGEL and VAN OOSTERHOUT, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

Plaintiff, Albert, appeals from judgment dismissing his claim and awarding defendant, Kopplin Molding Corporation, judgment on its counterclaim for the amount paid plaintiff on account. Albert, a mold manufacturer, sued Kopplin Molding Corporation for an alleged balance of some $17,000 claimed to be due for making a special mold for Kopplin, a plastic molding company, and for making repairs upon such mold. The answer denied that defendant owed plaintiff any money, and an affirmative defense stated plaintiff breached his warranty that the mold would be suitable for its intended purpose of producing plastic parts which would meet specifications described in a contract defendant had with the Army. Defendant counterclaimed for $3,871.07, which it had paid upon the purchase price of the mold before delivery, and for certain traveling expenses and loss of profits. Plaintiff in reply stated that he only agreed to build a mold in accordance with defendant's specifications, that he did so, and that he did not warrant the mold to accomplish its intended purpose. Plaintiff further alleged that the difficulty with the mold was caused by defendant's negligent operation thereof.

The court, trying the case without a jury, found plaintiff impliedly warranted the mold to be suitable for its intended purpose of producing plastic parts which would meet the requirement of defendant's contract with the Army. Plaintiff challenges this finding.

██ Jurisdiction, based upon diversity of citizenship and the jurisdictional amount, is established. The parties appear to agree that the contract is a Missouri contract. Hence, Missouri law applies.

In Hunter v. Waterloo Gasoline Engine Company, Mo.Sup., 260 S.W. 970, 973, the Supreme Court of Missouri stated the rule to be applied in determining the existence of an implied warranty as follows:

"* * * where the seller, be he manufacturer or dealer, undertakes to supply an article for a particular purpose, knowing that the buyer trusts to his judgment that the article is suitable for that purpose, an implied warranty arises that the article is suitable for such purpose. * * *"

The foregoing rule is reaffirmed in Davies v. Motor Radio Co., Mo.App., 236 S.W.2d 409, 412, 414. The Missouri court in the cases cited recognizes the rule it has adopted as the rule generally prevailing elsewhere, and cites authorities supporting the rule.

In analyzing the rule above quoted, the court in Davies v. Motor Radio Co., supra, states that in order to establish an implied warranty it is necessary to prove, "(1) the seller undertakes to furnish an article for a particular purpose, and (2) the buyer relies on the seller's judgment."

The evidence clearly establishes that plaintiff was familiar with the specifications of the plastic items to be furnished by defendant to the Army and knew defendant desired a mold that would produce such items, and there is evidentiary support for the court's finding that plaintiff undertook to furnish such a mold. It is agreed that the mold to be furnished was not a standard product, and that it had to be specially designed. There is a fact dispute on the issue of whether the buyer was relying upon the seller's judgment. Plaintiff was furnished with blueprints and specifications of the plastic parts defendant desired to produce. The mold was designed by plaintiff's draftsmen with the aid of plaintiff and his plant superintendent. Kopplin was shown some of the plans for the construction of the mold, but did not recall commenting on them. When Kopplin was asked, "Didn't you approve of some of these sketches?", he answered, "I wasn't concerned with the sketches or the drawings. My concern was with the finished mold, one that would produce these parts to specification."

■ While defendant offered some suggestions as to the method of building the mold, the court was warranted in finding that defendant relied upon plaintiff's judgment as to the manner in which the mold was to be constructed in order to produce the desired result. The trial court's finding that the plaintiff impliedly warranted the mold to be suitable for its intended purpose is supported by substantial evidence and is not clearly erroneous.

■ There is also adequate evidentiary support for the court's finding that the implied warranty was breached. Such finding is:

"There is no dispute between the parties that the mold never did operate as intended or produce plastic parts acceptable to Ordnance."

Plaintiff introduced evidence to support his contention that the failure of the mold to perform as warranted was caused by defendant's negligent and inept operation of the mold and defendant's failure to follow plaintiff's directions. Defendant produced evidence, corroborated by an Ordnance Department engineer, to the effect that proper care had been used in operating the mold. The court's finding upon this issue is:

"* * * Failure of the mold to function as represented by plaintiff was not due to defendant's fault, but because of manufacturing and design defects in the mold as produced by plaintiff. These defects included mechanical operation of the mold and features of the machine having to do with the size of the plastic pieces composing the units it was to produce."

Such finding is supported by substantial evidence.

Plaintiff next contends that, even if the evidence establishes an implied warranty and breach thereof, the defendant by prolonged use and abuse of the mold waived any right it might have had to rescind. Plaintiff contends that the relief sought by defendant is based upon rescission. Defendant denies that it has rescinded the contract, and asserts its defense and counterclaim are based upon damages for breach of warranty.

■ Missouri has not adopted the uniform sales law. However, Missouri courts have consistently held that upon breach of warranty the injured party has an election to rescind the contract within a reasonable time and recover the purchase price, or to affirm the contract and sue for damages. International Shoe Co. v. Lipschitz, Mo.App., 72 S.W. F.2d 122, 125; Dubinsky v. Lindburg Cadillac Co., Mo.App., 250 S.W.2d 830, 832; King v. Guy, Mo.App., 297 S.W.2d 617, 620.

■ Rescission and damages for breach of contract are inconsistent remedies, and an election to pursue one remedy, prosecuted to final judgment, bars the other remedy. King v. Guy, supra. The nature of a party's cause of action or defense must be determined by his pleadings. King v. Guy, supra; International Shoe Co. v. Lipschitz, supra; Alfond Shoe Co. v. F. Levy Shoe Co., Mo.App., 295 S.W. 134; Dubinsky v. Lindburg Cadillac Co., supra.

In the last three cases cited the pleadings were interpreted to assert a claim for damages for breach of warranty. Significance was given in the Alfond case to the fact that no allegation of return of the property or offer to return was made and to the presence of the general allegation of damage. In the International Shoe Co. case the court in reaching its conclusion that damages are sought states that rescission could not have been available under the pleaded facts.

Plaintiff places considerable reliance on King v. Guy, supra. In that case the court found that rescission had been pleaded. The general rules as to interpretation of pleadings were fully discussed. The court in King v. Guy found plaintiff pleaded he had tendered the return of the chattel and had renewed the tender at the trial, and had asked for rescission. In this respect the pleadings in King v. Guy are readily distinguishable from the pleadings in the case now before us.

▮■■ A careful examination of defendant's pleadings discloses nothing to indicate that defendant's claims are based upon rescission. Defendant does not assert that he has returned the mold to the plaintiff, or that he has offered to do so. Defendant does not pray for rescission. On the contrary, defendant prays for special damages for loss of profits. Rescission terminates the contract. After rescission, no right to recover for loss of profits remains.

Defendant at the trial offered no proof of return of property or of the tender thereof. The only evidence bearing upon any offer to return the mold was introduced by plaintiff. This evidence was in the form of a letter from defendant complaining about the operation of the mold and stating it was being returned. There is no evidence that the mold was ever returned.

It is not entirely clear from the trial court's opinion whether defendant was granted relief upon the basis of rescission or damages for breach of warranty. The trial court does deny special damages for loss of profits on the basis that the evidence supporting such a claim was too indefinite and speculative. This tends to indicate that the court treated defendant's claim as one for damages for breach of warranty.

We are convinced that the defendant in its pleadings bases its claim for relief upon damages for breach of warranty rather than upon rescission.

This brings us to plaintiff's final contention that the evidence did not show that the mold had no value for any purpose and, because of the lack of such proof, the court's denial of the plaintiff's claim and the allowance of defendant's counterclaim are erroneous.

■ The proper measure of damage for breach of warranty of fitness is the difference between the actual value of the property at the time of delivery and what its value would have been if it had conformed to the warranty. Harris v. Weber Motor Car Co., 212 Mo.App. 107, 251 S.W. 121, 122; Dubinsky v. Lindburg Cadillac Co., supra; International Shoe Co. v. Lipschitz, supra.

■ There is ample evidence in our present case to establish that the mold was completely worthless for its intended purpose. The mold was ordered for the very special purpose of molding plastic parts for an activator for practice mines. The demand for such a mold, even if it operated properly, would be extremely limited. Upon the basis of the evidence in this record as to the mold's faulty operation and its failure to mold parts which would meet Government specifications, the court was justified in deter-

mining that the mold as a tool or device was absolutely worthless. Defendant spent a large sum in labor and material in trying without success to manufacture the desired plastic parts, and there is no reason to believe that the mold as a tool would be of any value to anyone.

 Our conclusion that there is substantial evidence to support the trial court's determination that the mold was completely worthless for its intended purpose does not fully dispose of the damage issue. Under the law of Missouri the purchaser can not recover the full purchase price in an action for damages for breach of warranty if the product sold and delivered had any value for any purpose. Brown v. Weldon, 90 Mo. 564, 13 S.W. 342, 343; Small v. Bartlett, 96 Mo.App. 550, 70 S.W. 393; Heimann v. Hatcher, 106 Mo.App. 438, 80 S.W. 729, 730. It would seem that if the product delivered had any substantial value, even if it be only salvage value, such value should be credited against the claim for damages. In event the warranted article as delivered is of no substantial value for any purpose, there is complete failure of consideration and the purchaser is entitled to recover as damages for breach of warranty the value the article would have had if it had conformed to the warranty.

In Brown v. Weldon, supra, the Supreme Court of Missouri determined that before a purchaser can recover the full purchase price in a suit for damages for breach of warranty he must show not only that the article delivered was unfit for the purpose warranted, but also that it was of no value for any purpose. During the course of the opinion the court states (13 S.W. at page 343):

"In Murphy v. Gay [37 Mo. 535] the court said: 'The evidence tended to show the pipe was defectively made, unfit for the uses for which it was ordered, and worthless for any purpose but old iron;' which is but another form of saying that the pipe was of no appreciable value for any purpose. * * *"

Small v. Bartlett, supra, involved an action for breach of warranty of fitness in the sale of corn for cattle feed. The court restates the rule that full recovery of the purchase price can be allowed only when the product sold is shown to be worthless for any purpose, and concludes that the trial court was justified in inferring from all of the evidence that the corn was practically worthless, although there was evidence that some of the corn was fed to hogs. Judgment for the recovery of the full purchase price was affirmed. International Shoe Co. v. Lipschitz, supra, was an action for damages for breach of warranty of used shoes. The court holds that as to shoes delivered which were utterly worthless the price paid was the true measure of damages.

Plaintiff in his brief questions whether the court actually found the mold was worthless for any purpose. We think the court did so find. The court states, "There was a total failure of warranty by plaintiff." Moreover, it seems clear that a determination of total failure of consideration is implied in the court's finding that plaintiff is not entitled to recover for the balance of the purchase price and that defendant is entitled to recover for the payment it made. Plaintiff apparently so understood the court's decision. In plaintiff's motion to vacate judgment and for a new trial he asserts, "The court's judgment is based on an assumption that there was a total failure of consideration."

Our final problem is to determine whether there is evidentiary support for the conclusion that the mold was entirely worthless for any purpose. There is no direct evidence of the value of the mold as delivered. However, the court had before it detailed evidence as to the composition of the mold, including photographs and drawings of it. Some of the parts of the mold were in evidence. The price charged for the mold was approximately $20,000 of which some $2,788.76 represented cost of materials used. There is evidence to the effect that because of the mold's defective construction the op-

**112**

eration of the mold resulted in substantial damage to many of its component parts. It is clear that it was in the contemplation of the parties that the mold was to be given a fair trial. The court found defendant's use of the mold did not go beyond making reasonable efforts by proper means to make the mold perform its intended purpose.

We believe that there is evidence to support an inference that the salvage value of the mold was trivial and unsubstantial and that the court was warranted in concluding that the mold as delivered was practically worthless for any purpose.

The judgment appealed from is affirmed.