ROSA ALMA KEES, RESPONDENT, v. CANADA DRY GINGER ALE, INC., A CORPORATION, APPELLANT.—199 S. W. (2d) 76.

Kansas City Court of Appeals. January 13, 1947.

*Henry M. Shughart* and *Harry P. Thomson, Jr.,* for appellant.

*Calvin & Kimbrell, Walter W. Calvin* and *Bert S. Kimbrell,* for respondent.

1084

BLAND, J.—This is an action for damages for personal injuries. There was a verdict and judgment in favor of plaintiff in the sum of $2750. Defendant has appealed.

The facts show that plaintiff, who lives in Beatrice, Nebraska, was injured by an explosion of a bottle of carbonated water put up by the defendant. She testified that on March 1st, 1943, she purchased two of these bottles, identical in appearance, from the Lovell Food Market in Beatrice; that she took them home and stored them in her kitchen cabinet; that on the evening of March 31st, 1943, she took one of the bottles from the cabinet and placed it on top thereof where it remained for about four hours; that she then picked up the bottle with her right hand intending to put it in the refrigerator; that the bottle exploded with a loud noise, the glass cutting her right and left hand and some of her fingers.

Plaintiff tried her case under the *res ipsa loquitur* doctrine. This doctrine is a rule of evidence that relates to the mode of proof and is applicable where there has been an unexplained accident, and the instrument causing the injury was under the management or control of the defendant and, in the ordinary course of events, the accident would not have happened if the defendant had used due care. . The unexplained circumstances may, in a particular case, warrant an inference of negligence. The doctrine has been extended to apply to cases involving an exploding bottle of beverage where it is shown that the condition of the bottle was not changed after it left the bottler's possession and prior to the occurrence causing the injury. When all intervening causes have been eliminated then, in effect, the bottle is still regarded as though it continued to remain in the hands of the bottler. [See Stolle v. Anheuser-Busch, Inc., 271 S. W. 497; Tayer v. York Ice Machinery Corp., 119 S. W. (2d) 240, 244.] In Hughes v. Miami Coca Cola Bottling Co., 19 So. (2d) (Fla.) 862, 864, THE COURT said: "So far as we have been able to find from a study of the decisions, no court has ever held that recovery may be had in such cases, under the *res ipsa loquitur* doctrine, without an affirmative showing on the part of the plaintiff that after the bottle left the possession of the bottler it was not subjected to any unusual atmospheric changes

or changes in temperature, or that it was not handled improperly up to the time of the explosion.''

The meaning of the rule is not in dispute between the parties. Plaintiff admits that it was incumbent upon her to introduce evidence tending to show that from the time the bottle left the possession of the defendant until the time when it exploded, it had been handled by all persons through whose hands it had passed in a careful and prudent manner.

The evidence tends to show that the beverage was bottled in defendant's plant in North Kansas City, and was shipped by it to H. P. Lau Company, a wholesaler, in Beatrice. It was purchased from Lau by Lovell, who operated the Lovell Food Market, and was delivered to him at his store by an employee of H. P. Lau Company in one of its trucks. No effort was made by plaintiff to show by direct evidence as to the handling of the bottle from the time it left defendant's possession until the time it was delivered to Lovell. Plaintiff sought to show by circumstantial evidence, and by inferences from the evidence, that the bottle was in good condition at the time of its delivery to Lovell, (if it was it follows that it was in good condition when it left defendant's hands) thus raising the inference that the bottle was properly handled from the time it left defendant's possession until it reached the possession of Lovell.

There is no contention that defendant would be liable if the explosion resulted from some latent defect in the glass, of which the bottle was made, so it would appear that plaintiff would have had the jury infer that the cause of the explosion was an overcharge of gas.

In order to show that the bottle was properly handled plaintiff introduced Lovell's deposition. He testified that he operated a semi-self service grocery store in Beatrice; that he had six employees; that defendant's product was delivered in open cases; that when so delivered it was inspected either by himself or one of his employees; that ''we check each bottle to see there is no breakage, . . . we inspect all merchandise for breakage, discoloration, etc., . . . and see if it is in salable condition''; that after each inspection the case of bottles (presumably if the bottles are in good condition) is put on the shelf; that the case ''sets on the side and there is a pasteboard divider in the case around each bottle and only the top of the bottle sticks out of the case and they are laid on their sides in the case until they are sold . . . the neck of the bottle sticks out, and when they want a bottle they just pull it out of the case.'' ·

He further testified that beverages of this kind were difficult to get at the time; that he had only one case of 12 bottles in his store, which was received on January 28, 1943. He stated that he was reasonably certain that he, personally, checked this case of beverage on its arrival but could not definitely say that he did; that he had no personal recollection of selling the bottle in question to the plaintiff.

There is no evidence that Lovell ever saw the bottle in question again after it reached his store.

The case was placed on a shelf near the checking stand. As before stated, Lovell described his business as a semi-self service grocery store. The store was so arranged that the customers could wait upon themselves. While he had six employees the part that they played in the sales was "to assist customers only." The store was heated at all times. Nothing in it ever froze. Lovell was not in the store all of the time when it was open for business, but nearly so. He went out for his meals. Without objection, he was permitted to testify that the case of beverage in question was "apparently" in salable condition when it was received at his store. Over the objection of defendant, he was permitted to testify that the bottles in the case were not tampered with by himself or any of his employees, the objection going to the testimony relating to the employees; that the bottles of beverage were not tampered with or changed in any manner while they were in his store "because I stack that on the shelf down and if the cap had been tampered with it would have spilled on the floor— it couldn't have been tampered with, no sir"; that the caps on the bottles were not tampered with or changed while in his store; that the bottles, themsleves, were not broken, mutilated or changed. Defendant insists that the court should not have permitted this testimony.

None of Lovell's employees testified in the case and there is no evidence that plaintiff inspected the bottle in qusetion while it was in her possession.

Defendant's evidence tends to show that the bottles used in its business were the customary pressure glass beverage bottle purchased from two independent glass manufacturers, not connected with the defendant; that before being filled they were washed by machinery, placed on a conveyor belt and inspected for cleanliness and cracks; that syrup is put in the bottles and carbonated water, the latter containing carbon dioxide gas, and the bottles are capped by machine; that after being capped the bottles go through a test tank where pressure in the bottles is raised to approximately 100 pounds or one-half of the bottle capacity by a temperature of 100 to 110 degrees; that the bottles are again inspected by eye then labeled and hand packed in cases.

Defendant insists that the court erred in overruling its motion for a directed verdict and in permitting Lovell to testify to the matters and things which we have detailed, to which defendant objected at the trial. We think there is no question but that Lovell should not have been permitted to testify that the bottles were not tampered with while in his store and the bottles and caps were not changed while in his store. In these matters the witness was indulging in mere speculation, guess and conclusions. [See 32 C. J. S. p. 70; O'Neill Imp. Mfg. Co. v. Gordon, 269 S. W. 636; Rudy v. Cleveland C. C. & St. L.

R. Co., 278 S. W. 814; Gulf C. S. F. Ry. Co. v. Dean, 261 S. W. (Tex.) 520; Schmidt v. Pitluck, 26 S. W. (2nd) 859, 862; Cole v. Empire Elec. Co., 55 S. W. (2nd) 434; Fishing v. Everman Contracting Co., 63 S. W. (2nd) 30; Weinel v. Hesse, 174 S. W. (2nd) 903, 807, 908; Hall v. Wilkerson, 84 S. W. (2nd) 1063.] We have examined the cases cited by plaintiff and find them not in point.

Plaintiff insists that defendant did not object to this testimony; but, while, it did not object each time the objectionable testimony was admitted, having objected one time, it was not necessary to further object to testimony along the same line.

We are of the opinion that plaintiff's testimony falls far short of showing, by circumstances or inferences, that the bottle in question was properly handled by all persons through whose hands it passed from the time it left defendant's possession until it arrived in her hands. This is certainly true if we exclude the inadmissible testimony that we have mentioned.

Assuming that bottle was in a salable condition at the time it arrived at Lovell's store, and that it did not appear, at that time, to have been tampered with, mutilated or changed, nevertheless, the bottle in question could have been mishandled by customers and employees of Lovell in his store between the time it arrived and the time it was purchased by plaintiff, which covered a period of several weeks.

In addition to this, although the bottle may not have appeared, upon such an inspection as was made in the Lovell store, when it arrived there, to have been tampered with, mutilated or changed, there is no evidence that the inspection given the bottles at that time was such as to disclose the absence of small cracks in the bottle not visible to the naked eye. The bottle that did not explode was introduced in evidence and is brought here for our inspection. It has blown in the bottle the words "Canada Dry" and has two of defendant's labels on it; one a rather large one and another a small one. The two appear to cover at least 20% of the surface of the bottle. The labels are opaque. The bottle that exploded may have had small cracks or defects in it not visible to the naked eye upon inspection by Lovell or his employees. The bottle may have been frozen or subjected to extremely cold temperatures before it reached Lovell's store. It may have been dropped, cracked, tampered with or mishandled by the customers or the employees while it was on the shelf in Lovell's store. It was there approximately 30 days. Certainly the jury was required to indulge in guess and speculation in finding that between the time that the bottle left the possession of the defendant and when it came into the possession of the plaintiff it was not subjected to any condition that would tend to bring about the explosion resulting in plaintiff's injury. [Coca Cola Btl. Wks. v. Sullivan, 158 S. W. (2d) Tenn. 721; Hoback v. Coca Cola Btl. Wks, of Nashville, 98 S. W. (2d)

Tenn. 113; Dunn v. Hoffman Beverage Co., 20 Atl. (2d) N. J. 352; Markowitz v. Liebert & Obert, 43 Atl. (2d) N. J. 794; Hughes v. Miami Coca Cola Btl. Co., 19 So. Fla. 862.] Plaintiff failed to prove facts bringing herself within the *res ipsa loquitur* doctrine.

The judgment is reversed and the cause remanded.

All concur.