In re PENN HOOK COAL CO., INC., Debtor.

CREDIT ALLIANCE CORPORATION, Plaintiff,

v.

PENN HOOK COAL CO., et al., Defendants.

Bankruptcy No. 7–81–00247–B.
Adv. No. 7–85–0001.

United States Bankruptcy Court,
W.D. Virginia,
Big Stone Gap Division.

Jan. 7, 1987.

Wolfe & Farmer, Norton, Va., for debtor/defendant and for defendant Malcolm C. Williams.

Cynthia D. Kinser, Pennington Gap, Va., for defendant Gary L. Williams.

White, Elliott and Bundy, Bristol, Va., and Corneal L. Domeck, III, Credit Alliance Corp., Louisville, Ky., for plaintiff.

## MEMORANDUM OPINION

### H. CLYDE PEARSON, Chief Judge.

The issue before the Court is the liability of the Debtor and two guarantors for the deficiency balance claimed by the Plaintiff from the sale of collateral.

The following facts appear from the evidence. On February 22, 1980, the Debtor, Penn Hook Coal Company, Inc. ("Penn Hook"), entered into a contract with Croushorn Equipment Company, Inc. of Harlan, Kentucky, for the purchase of a John Deere Model 644B wheel loader. The contract called for a cash sale price of $77,-853.00, an initial down payment of $18,-500.00, and monthly payments of $2,196.50. On the same date, Malcolm C. Williams, Jr., President of Penn Hook, and his son, Gary L. Williams, principals of the debtor corporation, executed a personal guaranty agreement guaranteeing payment of the debt. Croushorn Equipment Company, Inc. subsequently assigned the contract to Credit Alliance Corporation ("Credit Alliance"), the Plaintiff herein.

On January 14, 1981, Credit Alliance initiated suit in the United States District Court for the Southern District of New York against Penn Hook, Malcolm Williams, and Gary Williams, jointly, for a deficiency in the sum of $62,120.78 from sale of the subject collateral. Penn Hook filed its Chapter 11 petition in this Court on March 4, 1981, and Credit Alliance was listed on the schedules as a creditor and had notice thereof. The individual guarantors have not filed petitions in this Court. On April 15, 1981, a default judgment in the sum of $62,120.78 was entered against Penn Hook, Malcolm Williams, and Gary Williams by the United States District Court for the Southern District of New York, despite the stay of 11 U.S.C. § 362. The judgment was docketed in the United States District Court for this District on June 1, 1981.

On October 5, 1984, Credit Alliance filed a garnishment action in the District Court for this District against Malcolm and Gary Williams to enforce the judgment. On December 21, 1984, the District Court entered an Order transferring the entire proceeding to this Court for further consideration of the issues. Following resolution of several pre-trial motions, this Court entered an Order on October 30, 1985 rendering void the default judgment entered, in violation of the stay, against Penn Hook by the New York court subsequent to the filing of its petition. In addition, the Order stayed proceedings against the guarantors, granting the parties time to amend the pleadings, frame issues, and complete discovery.

At hearing on May 28, 1986, counsel for Credit Alliance filed, pursuant to *Bankruptcy Rule* 3006, a motion to withdraw its Proof of Claim in the sum of $62,529.26 that was filed on December 29, 1982 in this case. Credit Alliance contends that, given that no distribution to unsecured creditors is expected, it should be allowed to withdraw its claim and pursue the guarantors whose obligation it alleges is separate and distinct and in no way dependent upon pur-

suit of its claim against Penn Hook. Credit Alliance further contends that the judgment obtained in the Southern District of New York is valid and enforceable against the guarantors, who did not defend the action in that court.

Counsel for the Williamses contend that the sale of the subject collateral was not conducted in a commercially reasonable manner and that, therefore, Penn Hook does not owe any deficiency to Credit Alliance. They contend that since Penn Hook, as principal, is not indebted to Credit Alliance, the guarantors, likewise, have no indebtedness.

The sole testimony presented at trial was that of Malcolm Williams, who stated that between June and August of 1980, after several months of difficulty with the mine site, Penn Hook surrendered the wheel loader to Croushorn Equipment Company, Inc. According to Williams, the loader was still in a relatively new condition when returned, and he estimated its value at $75,-000.00. Williams testified that he received the original notice of the sale of the loader and appeared on the date of sale. He testified further that only two other individuals, including a representative of Credit Alliance, were present, and bidding was never started. According to Williams, the representative of Credit Alliance stated that the sale would be postponed until another day, and that Williams would be notified. Williams testified that he received no further notice of sale or other disposition of the loader. Copies of the original contract, which contained the guaranty statement, and a copy of the default judgment entered in the action initiated by Credit Alliance in the District Court of New York were made part of the record. At the close of evidence, all matters were taken under advisement to determine whether Credit Alliance would be permitted to withdraw its Proof of Claim and whether there was any liability of the Debtor and the two guarantors for the deficiency balance claimed by Credit Alliance from the sale of the wheel loader.

## WITHDRAWAL OF PROOF OF CLAIM

Credit Alliance states that it wishes to avoid further expense and protracted litigation pursuing a claim against Penn Hook when it appears that there will be no distribution of assets when Penn Hook's Chapter 11 case is closed. Although it may appear to Credit Alliance that there will be no distribution at the close of the case, such a determination cannot be made until the case is, in fact, closed.

Credit Alliance contends that under *Bankruptcy Rule* 3006, it should be permitted to withdraw its Proof of Claim. *Bankruptcy Rule* 3006 provides:

"A creditor may withdraw a claim as of right by filing a notice of withdrawal, except as provided in this rule. If after a creditor has filed a proof of claim *an objection is filed thereto or a complaint is filed against that creditor in an adversary proceeding, or the creditor has accepted or rejected the plan or otherwise has participated significantly in the case, the creditor may not withdraw the claim except on order of the court after a hearing on notice to the trustee or debtor in possession,* and any creditors' committee selected pursuant to §§ 705(a) or 1102 of the Code. The order of the court shall contain such terms and conditions as the court deems proper. Unless the court orders otherwise, an authorized withdrawal of a claim shall constitute withdrawal of any related acceptance or rejection of a plan. (emphasis added)

■ *Bankruptcy Rule* 3006 is derived from former *Bankruptcy Rules* 305 and 10–104. Since 1938, when the *Federal Rules of Civil Procedure* were promulgated, it has generally been held that *Fed. R.Civ.P.* 41[1] governs the withdrawal of a

1. Fed.R.Civ.P. 41(a) provides:
   **Dismissal of Actions**
   (a) **Voluntary Dismissal: Effect Thereof.**

   (1) **By Plaintiff; by Stipulation.** Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United States, an action may

Proof of Claim. *In re Empire Coal Sales Corp.*, 45 F.Supp. 974, 976 (S.D.N.Y.), *aff'd sub nom. Kleid v. Ruthbell Coal Co.*, 131 F.2d 372, 373 (2d Cir.1942); *Kelso v. Maclaren*, 122 F.2d 867, 870 (8th Cir.1941); *In re Hills*, 35 F.Supp. 532, 533 (W.D.Wash. 1940). These cases held that after an objection to a Proof of Claim has been filed, a Proof of Claim may be withdrawn only subject to approval by the court. Here, an objection to the Proof of Claim has been filed and the claim attacked in this adversary proceeding, and further, within the language of *Bankruptcy Rule* 3006, Credit Alliance "has participated significantly in the case." Therefore, it is within the discretion of the court to permit or deny the motion to withdraw.

Neither *Bankruptcy Rule* 3006 nor former *Bankruptcy Rule* 305 provides guidance as to when the court should allow withdrawal. The Advisory Committee

Note to *Bankruptcy Rule* 3006 states that "[w]hile purely formal or technical participation in a case by a creditor who has filed a claim should not deprive the creditor of the right to withdraw the claim, a creditor who has accepted a dividend or who has voted in the election of a trustee or otherwise participated actively in proceedings in a case should be permitted to withdraw only with the approval of the court on terms it deems appropriate after notice to the trustee", *citing* 3 *Collier on Bankruptcy*, 205–206 (1964). "It is doubtful that a desire to avoid summary jurisdiction is a sound reason in most cases ..." 12 *Collier on Bankruptcy*, ¶ 305.07[2] (14th Ed.1978).

Under the *Federal Rules of Civil Procedure* [2], it is within the discretion of the court to permit an amendment which defeats jurisdiction, or it may decline to do so.[3] *Moore's Federal Practice*, ¶ 15.09 (2d

be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs, or (ii) by filing a stipulation of dismissal signed by all parties who have appeared in the action. Unless otherwise stated in the notice of dismissal or stipulation, the dismissal is without prejudice, except that a notice of dismissal operates as an adjudication upon the merits when filed by a plaintiff who has once dismissed in any court of the United States or of any state an action based on or including the same claim.

(2) **By Order of Court.** Except as provided in paragraph (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim has been pleaded by a defendant prior to the service upon him of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

2. *Id.*

3. **28 U.S.C. § 1334**
   **§ 1334. Bankruptcy cases and proceedings.**
   (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11 [11 USCS §§ 101 *et seq.*].
   (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or

courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [11 USCS §§ 101 *et seq.*], or arising in or related to cases under title 11 [11 USCS §§ 101 *et seq.*].

(c)(1) Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 [11 USCS §§ 101 *et seq.*] or arising in or related to a case under title 11 [11 USCS §§ 101 *et seq.*].

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 [11 USCS §§ 101 *et seq.*] but not arising under title 11 [11 USCS §§ 101 *et seq.*] or arising in a case under title 11 [11 USCS §§ 101 *et seq.*], with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this action, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain made under this subsection is not reviewable by appeal or otherwise. This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code [11 USCS § 362], as such section applies to an action affecting the property of the estate in bankruptcy.

(d) The district court in which a case under title 11 [11 USCS §§ 101 *et seq.*] is commenced or is pending shall have exclusive jurisdiction of

Ed.1985), *citing Wallace v. Knapp-Monarch Co.*, 234 F.2d 853 (8th Cir.1956). In *Wallace v. Knapp-Monarch Co.*, the United States Court of Appeals for the Eighth Circuit stated: "There is no inherent right of a plaintiff to have leave to amend where the ends of justice would not be aided.... To have allowed an amendment [to add a local defendant] at this late date would have been in hindrance of rather than in aid of justice. The court properly exercised its discretion in denying the motion to amend." 234 F.2d at 860. In this adversary proceeding, Credit Alliance is attempting to do, by moving for withdrawal of its Proof of Claim, what a plaintiff in the District Court does when amending its pleadings to defeat jurisdiction in that court. This Court, in its sound discretion, must determine whether the withdrawal of the claim at this time would be in aid of justice.

█ The Court, having maturely considered the facts before it, denies the motion of Credit Alliance to withdraw its Proof of Claim. The result of filing a Proof of Claim is to submit to a determination by the bankruptcy judge the merits of the claim. 12 *Collier on Bankruptcy*, ¶ 305.05 (14th Ed.1978); 2 *Collier on Bankruptcy*, ¶ 23.09[6] (14th Ed.1978). Credit Alliance is attempting to remove from the jurisdiction of this Court the determination of the merits of its claim against Penn Hook and the effect of § 362 upon its judgment against the Debtor and guarantors. This Court notes that extensive proceedings, discovery, hearings, briefing, and preliminary determinations have been made herein and that the file is voluminous. To permit withdrawal of the Proof of Claim so that Credit Alliance may pursue the guarantors in the U.S. District Court after this Court has held that the New York judgment is void against the Debtor and has stayed proceedings against the guarantors would be unnecessarily expensive to the parties and in hindrance of

all of the property, wherever located, of the debtor as of the commencement of such case,

justice. This Court will not permit Credit Alliance to defeat jurisdiction by withdrawing its Proof of Claim based on its judgment obtained in New York in contravention of 11 U.S.C. § 362.

### EFFECT OF 11 U.S.C. § 362 UPON JUDGMENT AGAINST GUARANTORS

Credit Alliance asserts that the stay of 11 U.S.C. § 362 as it relates to the New York judgment against Penn Hook has no effect on the guarantors who were co-defendants and jointly liable on the debt. The Plaintiff states that it unintentionally, although knowingly, violated the stay when it obtained the default judgment against Penn Hook. It argues that the stay did not extend to the guarantors and that the judgment is enforceable against them. As authority for its proposition, the Plaintiff relies upon *Williford v. Armstrong World Industries, Inc.*, 715 F.2d 124 (4th Cir. 1983). In that case, the United States Court of Appeals for the Fourth Circuit held that the co-defendants in an action alleging injuries due to exposure to various asbestos products which they manufactured or supplied could not avail themselves of the automatic stay of 11 U.S.C. § 362 which was applicable to four defendants who had filed petitions for reorganization under Chapter 11 where the defendants in bankruptcy were simply joint tortfeasors and not indispensable parties to the litigation in the District Court. In a recent opinion, *A.H. Robins, Inc. v. Piccinin*, 788 F.2d 994 (4th Cir.1986), the Fourth Circuit stated that the *Williford* case had set forth the narrow construction to be given to 11 U.S.C. § 362, but it added, "there are cases [under 362(a)(1) ] where a bankruptcy court may properly stay the proceedings against non-bankrupt co-defendants." 788 F.2d 994 at 999, *citing In re Johns-Manville Sales Corp.*, 26 B.R. 405, 410 (S.D.N.Y. 1983).

and of the estate.

In the *Johns-Manville Sales Corp.* case, the court said that in order for relief to be available to the non-bankrupt defendants, there must be "unusual circumstances" and certainly "[s]omething more than the mere fact that one of the parties to the lawsuit filed a Chapter 11 bankruptcy must be shown in order that the proceedings be stayed against non-bankrupt parties." 26 B.R. 405, 410, *citing Royal Truck & Trailer v. Armadora Maritima Salvadorena,* 10 B.R. 488, 491 (N.D.Ill.1981). In the *A.H. Robins, Inc. v. Piccinin* case, the Court of Appeals addressed what constituted an "unusual situation" as used by the courts in the *Johns-Manville Sales Corp.* and *Royal Truck & Trailer* cases. The court stated as follows:

> "This 'unusual situation', it would seem, arises when there is such identity between the the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor. An illustration of such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case. To refuse application of the statutory stay in that case would defeat the very purpose and intent of the statute."

*A.H. Robins v. Piccinin,* 788 F.2d 994, 999 (4th Cir.1986).

The court then applied the "unusual situation" test to the facts before it to determine whether the stay should apply to the defendants who were not subject to the Bankruptcy Court. When A.H. Robins filed its Chapter 11 petition, a number of plaintiffs in suits where there were defendants other than Robins sought to sever their actions against Robins and to proceed with their claims against the co-defendants. The District Court granted a preliminary injunction enjoining the plaintiffs from pursuing Robins' liability insurer, a co-defendant. The Circuit Court affirmed the District Court's granting of the preliminary injunction. The Circuit Court reviewed

several decisions in which non-debtor co-defendants had sought to have the statutory stay of 11 U.S.C. § 362 apply to proceedings against them. In two of the cases discussed by the Circuit Court—*In re Metal Center,* 31 B.R. 458 (D.Conn.1983), and *Seybolt v. Bio-Energy of Lincoln,* 38 B.R. 123 (S.D.Mass.1984)—the co-defendants were guarantors. The Fourth Circuit made the following statement:

> "In *Metal Center* the third-party plaintiff had been sued, along with the debtor, on his guaranty of the debtor's obligation. The third-party was entitled to be indemnified by the debtor on account of any judgment rendered against him because of his guaranty. While the action against both the debtor and the guarantor was pending, the debtor filed its Chapter 11 petition. The action was stayed against the debtor but the plaintiff sought to continue his suit against the guarantor. The guarantor moved to stay the action against him. The bankruptcy court reviewed the motion because of the possible 'effect upon the debtor of a state court judgment against Gardner [the guarantor].' ... 'where, however, a debtor and nondebtor are so bound by statute or contract that the liability of the nondebtor is imputed to the debtor by operation of law, then the Congressional intent to provide relief to debtors would be frustrated by permitting indirectly what is expressly prohibited in the Code.' ... 'Clearly the debtor's protection must be extended to enjoin litigation against others if the result would be binding upon the debtor's estate', and this is so, whether the debtor is a party or not. 31 B.R. at 462."

*A.H. Robins,* at 999. Although the court in *In re Metal Center* did not extend the stay of § 362 to the guarantor because it concluded that a judgment against the third-party would not be binding on the Bankruptcy Court, the Court of Appeals for the Fourth Circuit stated that under the facts of *In re Metal Center,* it would have avoided such a "shocking result" by extending the stay to the third-party. *Id.* at 1000.

In *Seybolt v. Bio-Energy of Lincoln, Inc.*, 38 B.R. 123 (D.Mass.1984), the other case involving a guarantor as co-defendant that was discussed by the Court in *A.H. Robins v. Piccinin*, the Court held that a guarantor entitled to indemnity by the debtor would be entitled to seek a stay under § 362.

The Fourth Circuit also discussed *In re Brentano's*, 27 B.R. 90 (S.D.N.Y.1983). The Court stated that although *In re Brentano's* did not directly concern § 362, the language used by the court in that case, when addressing the jurisdiction of the Bankruptcy Court, was applicable to issues regarding imposition of the stay with regard to guarantors. *A.H. Robins*, at 1000. With regard to *In re Brentano's*, the Court stated:

> "It said that the action against the guarantor-indemnitee 'could and would affect the estate in bankruptcy', since under the indemnity agreement, 'a judgment in favor of the [plaintiff] in the guaranty action would automatically result in indemnification liability against Brentano's' [*i.e.*, the indemnitor]. Accepting this language one would have difficulty not concluding that the action was in effect one against the debtor and as such would qualify for relief under (a)(1)."

*A.H. Robins*, at 1000. Even in the absence of an explicit indemnification agreement, an action by a creditor against a guarantor of a debtor's obligations will necessarily affect that creditor's status vis-á-vis other creditors. *A.H. Robins*, at 1001; *Pacor, Inc. v. Higgins*, 743 F.2d 984 at 995 (3d Cir.1984).

In addition to the stay of proceedings against guarantors pursuant to 11 U.S.C. § 362, the Bankruptcy Court has statutory power to stay actions involving the guarantors under 11 U.S.C. § 105, which provides that the Bankruptcy Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." This section " 'empowers the Bankruptcy Court to enjoin parties other then the bankrupt' from commencing

or continuing litigation." *A.H. Robins*, at 1002, *citing In re Otero Mills*, 25 B.R. 1018, 1020 (D.N.M.1982). As to this Court's equity powers, see *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281. *See also In re Brothers Coal Co., Inc.*, 6 B.R. 567; 6 B.C.D. 1066; 3 C.B.C.2d 31 (Bankr.W.D.Va.1980).

The Fourth Circuit, in *A.H. Robins v. Piccinin*, stated that jurisdiction to stay proceedings against guarantors is also conferred by 28 U.S.C. § 1334.[8]

> "Beyond these statutory powers under section 362 and section 105 to enjoin other actions whether against the debtor or third-parties and in whatsoever court, the bankruptcy court under its comprehensive jurisdiction conferred by section 1334, 28 U.S.C., has the 'inherent power of courts under their general equity powers and in the efficient management of the dockets to grant relief' to grant a stay (cites omitted). In exercising such power the court, however, must 'weigh competing interests and maintain an even balance' and must justify the stay 'by clear and convincing circumstances outweighing potential harm to the party against whom it is operative.' *Williford, supra, Metal Center* and *Seybolt*, discussed *supra*, are illustrative of situations in which courts have found sufficient grounds to grant a stay under this power."

Applying to this adversary proceeding the Fourth Circuit's holding in *A.H. Robins* that 11 U.S.C. §§ 105, 362, and 28 U.S.C. § 1334 empower the Bankruptcy Court to stay proceedings against non-debtor guarantors, the Court, as previously ordered, now holds that any action by Credit Alliance against Malcolm Williams or Gary Williams, guarantors of the Debtor Penn Hook, shall be stayed. Credit Alliance obtained a judgment against the Debtor and the guarantors after it was aware of the stay of § 362. This Court will not permit Credit Alliance to benefit from its wrong by allowing it to pursue the Debtor, indirectly, by garnishing the salaries of its guarantors, thereby creating a right to in-

demnity, when it could not legally pursue the Debtor directly and did so in violation of 11 U.S.C. § 362 when it obtained the joint judgment against the Debtor and the guarantors in the New York court. By attempting to enforce the judgment against the guarantors, Credit Alliance is, in fact, trying to enforce a void judgment against the Debtor.

■ The Court finds further that because the judgment was obtained in violation of 11 U.S.C. § 362 and is therefore void as applied to the Debtor, the judgment is also void as applied to the guarantors. Because there is no liability on the part of the Debtor, there is no liability on the part of the guarantors who did not defend the action because they assumed, according to the record here, that the stay of § 362 applied to the entire action brought by Credit Alliance. The situation was one in which there was such identity between the Debtor and the third-party defendants that the Debtor was the real party-defendant. *See A.H. Robins v. Piccinin,* at 999. A judgment obtained in violation of the stay of § 362 is void. 11 U.S.C. § 362.

■ The Court notes that, even if it had considered the merits of Credit Alliance's claim against the guarantors, there would be no liability on the part of the guarantors under applicable commercial law. The uncontraverted evidence was that the Debtor received no notice of the sale of the collateral. Notice is required in order for the sale to have been conducted in a commercially reasonable manner. *See Va. Code Ann.* § 8.9–504 (1965); New York U.C. C.Law § 9–504 (Consol.1982). Because Credit Alliance did not conduct a lawful sale, it cannot assert that the Debtor is liable for the deficiency absent proof by the creditor that the market value of the collateral was less than the value due. The burden of proof is upon the creditor. *In re Bishop,* 482 F.2d 381, 385–386 (4th Cir. 1973). Credit Alliance offered no evidence as to the manner in which any sale was conducted and the collateral disposed of which would show it to be commercially reasonable, or of market value. The only

evidence of record as to value was the testimony of Malcolm Williams. He testified that the collateral was relatively new and worth what was owed on it. Absent other evidence of market value, Credit Alliance may not assert a deficiency against the Debtor after conducting a sale that was not commercially reasonable. The Court is constrained to observe a shocking fact, *i.e.,* that equipment of an uncontraverted value of $75,000.00 was sold in some manner, resulting in a deficiency of $62,120.78. The Court cannot close its eyes to such facts in deciding whether the disposition was in a commercially reasonable manner. *See In re Bishop, supra.* The creditor seeking recovery bears this burden, and this record is totally devoid of evidence on the issue by the creditor.

Credit Alliance argues that the guaranty instrument was an absolute, direct, and unconditional guaranty and can be proceeded on despite any invalidity of the principal obligation. The common law rules of guaranty need not be applied here because no principal obligation exists. The United States Supreme Court stated in *United States v. Plesha,* 352 U.S. 202, 204, 77 S.Ct. 275, 276, 1 L.Ed.2d 254 (1957), that where no debt exists, there is no basis for applying the rules of guaranty. If no effective primary obligation exists, a collateral agreement underwriting is not operative or enforceable. *Davies v. Lahann,* 145 F.2d 656 (10th Cir.1944); *Yangtsze Rapid S.S. Co. v. Deutsch-Asiatische Bank,* 59 F.2d 8 (9th Cir.1932). Because there is no primary obligation on the part of Penn Hook, the principal, there is no obligation on the part of Malcolm and Gary Williams, the guarantors.

For the reasons stated above, the Court holds that no deficiency exists against the Debtor and that the guarantors owe no deficiency based upon the sale of the collateral by Credit Alliance, and that any further action by Credit Alliance to obtain a judgment or to enforce the New York judgment is void and stayed.

The Court defers for further hearing the issue of sanctions to be assessed against

Credit Alliance under 11 U.S.C. § 362(h) for violation of the stay of 11 U.S.C. § 362.

An appropriate Order will issue.