George C. SEYBOLT, Plaintiff and Counterclaim Defendant,

v.

BIO–ENERGY OF LINCOLN, INC., Harvey E. Greif, Fred M. Dellorfano, Jr., Jerold S. Weinstein, George C. Colarullo, Jr., Allan R. Gruber and Stanley Sacon, Defendants, Counterclaimants and Crossclaimants,

v.

SOLID FUEL SALES CORPORATION, Bio-Mass. Energy Corporation f/k/a GCH Enterprises Corporation, and Calvert H. Seybolt, Crossclaim Defendants,

v.

BIO-ENERGY OF LINCOLN ASSOCIATES, Debtor in Possession, Defendant, Counterclaimant and Crossclaimant.

Adv. No. 83–0379–L.

United States Bankruptcy Court, D. Massachusetts.

Feb. 23, 1984.

Larry C. Kenna, Choate, Hall & Stewart, Boston, Mass., for George C. Seybolt.

Melvin S. Hoffman, Barron & Stadfeld, Boston, Mass., for defendants.

## MEMORANDUM DECISION RE MOTION TO REMAND AND MOTION FOR CHANGE OF VENUE

THOMAS W. LAWLESS, Chief Judge.

The Court, having reviewed the parties' memoranda, reply memoranda, affidavits and exhibits and being fully apprised of the matters contained therein, finds as follows:

On or about February 24, 1983, George C. Seybolt ("George Seybolt") filed a civil action in Suffolk County, Massachusetts, Superior Court (C.A. No. 60062) seeking to recover $100,000 plus interest alleged to be due him under a promissory note signed by Fred M. Dellorfano, Jr. as president of Bio-Energy of Lincoln, Inc. ("Bio-Energy, Inc.") (the sole general partner of a limited partnership named Bio-Energy of Lincoln, Associates), and to recover the amount of said obligation from several individuals who had executed guarantees of this obligation. On or about March 30, 1983, Bio-Energy, Inc. and the individual defendants filed an "Answer, Counterclaim and Crossclaim" in the state court action denying George Seybolt's claims and raising several affirmative defenses; additionally, Bio-Energy, Inc. asserted a counterclaim against George Seybolt and sought to join in the action as crossclaim defendants two corporations and an individual with whom it was alleged George Seybolt, Bio-Energy, Inc., and Bio-Energy of Lincoln, Associates ("Bio-Energy Associates") (a Massachusetts limited partnership currently a debtor-in-possession in a case under Chapter 11 pending in the District of Maine) had connections and dealings during 1981 and 1982.

Bio-Energy, Inc. alleged that the $100,-000 was not a loan but rather a contribution to the capital of Bio-Energy Associates (the Chapter 11 limited partnership of which Bio-Energy, Inc. is the sole general partner) and that the "active involvement of G. Seybolt in the day to day business operations" of Bio-Energy Associates resulted in George Seybolt assuming the liability obligations of a general partner. Bio-Energy, Inc. further asserted claims on its own behalf and on behalf of Bio-Energy Associates against Solid Fuel Sales Corporation ("Solid Fuels"), Bio-Mass. Energy Corporation ("Bio-Mass.") f/k/a GCH Enterprises Corporation, George Seybolt and Calvert Seybolt based on alleged business transactions among the parties in connection with the operations of a Woodex manufacturing plant of Bio-Energy Associates located in Lincoln, Maine ("Woodex" is the trade name for pelletized wood fuel made from fibrous organic material). George Seybolt owns all or substantially all of the issued and outstanding stock of Bio-Mass.

and Solid Fuels. Calvert Seybolt is president and a director of both Bio-Mass. and Solid Fuels.

Bio-Energy, Inc. alleged that in August, 1982, Bio-Energy Associates and George and Calvert Seybolt, acting individually and as agents for Bio-Mass. and Solid Fuels, reached an agreement whereby the Seybolts would operate and manage the plant and would purchase all of the finished Woodex product. It is further alleged that the Seybolts began to operate and manage the Lincoln plant in September, 1982, and did so until Bankruptcy Judge Goodman, the judge presiding in Bio-Energy Associates' Chapter 11 proceeding in the District of Maine, ordered the management agreement reduced to writing; the failure to do so resulting in the termination of the management agreement in mid-January, 1983. Bio-Energy, Inc. and the individual guarantor defendants have denied the existence and/or validity of the promissory note and have asserted the affirmative defenses of cancellation, offset, accord and satisfaction, novation, payment, laches and lack of standing.

The defendants have also counterclaimed and crossclaimed in the Superior court action. As noted above, it is the defendants' contention that the $100,000. was a capital contribution and not a loan. In Count I of their counterclaim, the defendants contend that as George Seybolt has made a capital contribution, George Seybolt, Calvert Seybolt, Bio-Mass., Solid Fuels f/k/a GCH Enterprises Corporation be declared general partners and liable for all claims of creditors of the Chapter 11 debtor, Bio-Energy Associates.

In Count II, the defendants seek recovery of lost profits due to the alleged breach of the above-mentioned management agreement by the Seybolts, Solid Fuels and Bio-Mass. and, in Counts III, IV and VI, the defendants seek actual damages for said breach.

In Count V, the defendants claim that approximately forty thousand ($40,000) dollars of credits were fraudulently obtained from Bio-Energy Associates by the Seybolts, Bio-Mass. and Solid Fuels.

Count VI seeks recovery for alleged post-Chapter 11 petition preferential payments for pre-petition obligations made to the Seybolts, Bio-Mass. and Solid Fuels contrary to instructions that were asserted to have been made by counsel for Bio-Energy Associates and in violation of the United States Bankruptcy Code.

Count VII seeks compensatory and punitive damages for alleged tortious acts of the Seybolts, Bio-Mass., and Solid Fuels.

On or about April 7, 1983, Bio-Energy Associates filed in the state court action a "Motion for Leave to Intervene as a Party Defendant, Counterclaimant and Cross-claimant," and further filed "Proposed Answer, Affirmative Defenses, Counterclaim and Crossclaim" in support of its motion to intervene. Bio-Energy Associates has advanced substantially the same defenses and claims made by its sole general partner, Bio-Energy, Inc. Additionally, both Bio-Energy Associates and Bio-Energy, Inc. allege that the monies which George Seybolt claims to have lent Bio-Energy, Inc. were utilized exclusively in connection with the operations of Bio-Energy Associates' Woodex plant. In the event that George Seybolt is successful in recovering these monies from Bio-Energy, Inc., they further allege that under the partnership agreement, Bio-Energy, Inc. would have a right to indemnification from Bio-Energy Associates. The motion to intervene was allowed by the state court and subsequently Bio-Energy Associates removed the state court case to this Court pursuant to 28 U.S.C. § 1478(a). Bio-Energy Associates has filed a Motion for Change of Venue of this adversary proceeding to the District of Maine where its Chapter 11 proceeding is pending. George Seybolt has filed a Motion to Remand this proceeding to the state court.

28 U.S.C. § 1478 provides for removal of civil actions to the bankruptcy courts:

(a) A party may remove any claim or cause of action in a civil action, other than a proceeding before the United States Tax Court or a civil action by a

Government unit to enforce such governmental unit's police or regulatory power, to the bankruptcy court for the district where such civil action is pending, if the bankruptcy courts have jurisdiction over such claim or cause of action.

(b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order under this subsection remanding a claim or cause of action, or a decision not so remanding is not reviewable by appeal or otherwise.

"A prerequisite for removal under section 1478 is that the bankruptcy court have jurisdiction over the claim or cause of action sought to be removed." *In re Mansen,* 20 B.R. 391, 393 (Bkrtcy.D.Mass.1982). *See also Flint v. Speir Insurance Agency, Inc.,* 33 B.R. 814 (D.C.D.Nev.1983). George Seybolt argues that the decision of the Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) invalidated § 241(a) of the Bankruptcy Reform Act in its entirety, which added §§ 1471–1482 to Title 28 of the United States Code, and thus this Court no longer has the power to remove this case from the state court. However, despite the broad characterization of the issue by the plurality opinion in *Northern Pipeline,* appellate courts which have interpreted that decision have virtually unanimously held that the only issue decided by the Supreme Court in *Northern Pipeline* concerned the jurisdiction of bankruptcy courts under 28 U.S.C. § 1471(c) as enacted in § 241(a) of the Bankruptcy Reform Act. *See In re Kaiser,* 722 F.2d 1574 (2nd Cir.1983); *In re Braniff Airways, Inc.,* 27 B.R. 231 (Bkrtcy. N.D.Tex.1983), *aff'd,* 700 F.2d 214 (5th Cir. 1983), *cert. denied,* —— U.S. ——, 103 S.Ct. 2122, 77 L.Ed.2d 1302; *White Motor v. Citibank, N.A.,* 704 F.2d 254 (6th Cir.1983); *In re Hansen,* 702 F.2d 728 (8th Cir.1983); *In re South Portland Shipyard and Maine Railways Corp.,* 32 B.R. 1012, 10 B.C.D. 1385 (D.C.D.Me.1983); and *In re Romeo J. Roy,* 32 B.R. 1008, 10 B.C.D. 1392 (D.C.D.Me.1983). *But see Rhodes v. Stewart,* 705 F.2d 159 (6th Cir.1983) (section 1471 declared unconstitutional *in toto* in *Northern Pipeline* ) (dicta). Those decisions which hold that 28 U.S.C. § 1471 was not invalidated in its entirety apply *a fortiori* in support of the continued vitality of 28 U.S.C. § 1478. *See In re Metal Center, Inc.,* 31 B.R. 458 (Bkrtcy.D.Conn.1983).

This reading of the *Northern Pipeline* decision does not presuppose the validity of the so-called Emergency Resolution, which is itself the subject of serious constitutional challenge. *See In re South Portland Shipyard and Maine Railways Corp., supra,* and *In re Romeo Roy, supra.* Until the First Circuit addresses the *Romeo Roy* and *South Portland* appeals, however, this Court will respect the stays of execution issued by the District Court (Carter, D.J.) in those decisions and continue to operate.

■ Seybolt next argues that the Court has no jurisdiction over the claims or causes of action asserted by George Seybolt against Bio-Energy, Inc. and the individual guarantors because none of them are debtors in any bankruptcy proceeding. I disagree because, assuming as I have that the Emergency Resolution is valid, the bankruptcy court has jurisdiction to hear all proceedings related to a case filed under the Bankruptcy Code. *See Emergency Resolution* (D.Mass. December 22, 1982). This jurisdictional grant extends to any matter which may have any effect on the bankruptcy case. *See In re U.S. Air Duct,* 8 B.R. 848, 851 (Bkrtcy.N.D.N.Y.1981). It may also extend to non-debtor third-parties, including guarantors and principals of the debtor, *see In re Brothers Coal Co., Inc.,* 6 B.R. 567 (Bkrtcy.W.D.Va.1980) (principal-guarantor); *In re U.S. Air Duct Corp., supra,* (principal); *In re Brentano's Inc.,* 27 B.R. 90 (Bkrtcy.S.D.N.Y.1983 (guarantor), and to non-debtor general partners of a debtor partnership, *see Matter of Old Orchard Investment Co.,* 31 B.R. 599 (D.C. W.D.Mich.1983).

■ Whether the bankruptcy court should exercise its related jurisdiction over these non-debtor parties depends upon "whether the determination of the claims

against the Non-Debtor will or will not affect the Debtor's assets and/or liabilities as they existed at the date of the petition and its bankruptcy schedules." *In re Brentano's Inc., supra,* at 91.

■ With respect to George Seybolt's claims against the general partner Bio-Energy, Inc., it is well-established that partnerships and partners are separate legal entities. *Liberty National Bank v. Bear,* 276 U.S. 215, 48 S.Ct. 252, 72 L.Ed. 536 (1928). Notwithstanding this legal distinction, where a partnership is in bankruptcy and its general partner is not, the special relationship between the two often compel a bankruptcy court to restrain a third party's threatened depletion of assets of the general partner in order to ensure a fair and orderly distribution of assets among the partnership creditors. *Matter of Old Orchard Investment Co., supra; In the Matter of Elemar Associates,* 3 B.C.D. 958 (Bankr.S.D.N.Y.1977) (Chapter XI partnership). *Contra In re Aboussie Bros. Construction Co.,* 8 B.R. 302 (D.C.E.D.Mo. 1981).

■ The legal relationship between a partnership and its general partner explain why actions to collect partnership debts from the individual partners are "related to" a partnership's bankruptcy proceeding. If a general partner has the requisite authority, or the partnership subsequently ratifies the otherwise unauthorized act, the general partner's action binds the partnership whether the general partner acts in his own name or in the partnership name. *See* 60 Am.Jur.2d *Partnership* §§ 129, 134 (1969). To render the partnership liable in the case of an ordinary written contract, it is not essential that the name of the partnership be mentioned in the writing, *see* 60 Am.Jur.2d., *supra,* at § 140, or that the third party was aware of the partnership relation at the time it entered into the agreement with the general partner. *See* 60 Am.Jur.2d., *supra,* at § 134.

■ In the instant case, both Bio-Energy, Inc. and Bio-Energy Associates have admitted that the monies obtained by Bio-Energy, Inc. from George Seybolt were obtained by Bio-Energy, Inc. to further the partnership's business. Not only would Bio-Energy Associates have to indemnify Bio-Energy, Inc. to the extent George Seybolt recovers its claim against the general partner, *see* 60 Am.Jur.2d, *supra,* at § 114, but, more importantly, George Seybolt's recovery from the general partner of monies that are asserted to be either partnership debts and/or a capital contribution to the partnership would destroy the equality of treatment among a debtor's creditors which bankruptcy laws are designed to promote. This is so because under partnership law, individual assets of a general partner are part of the general fund to which partnership creditors may look to satisfy partnership debts. *See Matter of Old Orchard Investment Co., supra,* at 601. If George Seybolt's claim is ultimately determined to be a debt of Bio-Energy Associates, then George Seybolt's now-recovery from Bio-Energy, Inc. would give him a preference over other creditors of the partnership. A similar result would occur if George Seybolt's $100,000 "loan" is ultimately determined to be a capital contribution to the partnership, because such interests are subordinate to claims of the creditors of the partnership.

■ Accordingly, I find that George Seybolt's claims against Bio-Energy, Inc. are within this Court's jurisdiction and should be stayed until the matters delineated above, among others, are finally determined. *See Matter of Old Orchard Investment Co., supra; In the Matter of Elemar Associates, supra.*

As to George Seybolt's claims against the individual guarantors on the alleged promissory note, the collection from a non-debtor-guarantor will not ordinarily affect the debtor-principal because the right to demand payment from the debtor merely changes hands; it passes from the creditor to the guarantor. *See* 38 Am.Jur.2d *Guaranty* § 127 (1968). However, under certain circumstances, collection of a debt from the guarantor will have repercussions on the debtor-principal:

Where, however, a debtor and a nondebtor are so bound by statute or contract that the liability of the nondebtor is imputed to the debtor by operation of law,

then the Congressional intent to provide relief to debtors would be frustrated by permitting indirectly what is expressly prohibited by the Code.... Clearly the debtor's protection must be extended to enjoin litigation against others if the result would be binding upon the debtor's estate.... While it might be argued that voluntary payment by a guarantor does not bind the principal debtor where the principal debtor has objected to the underlying debt, the result is different where the creditor obtains a judgment against the guarantor. Under those circumstances, the issue of the validity of the underlying debt must be litigated and established before the imposition of such liability, and would have a binding effect upon the principal debtor in a claim over by the guarantor.

*In re Metal Center, Inc.*, 31 B.R. 458, 462 (Bkrtcy.D.Conn.1983). The concept that notice and an opportunity to defend binds the principal on a judgment against a guarantor (in a case in which the principal did not participate) springs from notions of res judicata. If George Seybolt recovers a judgment against the guarantors in the state court, Bio-Energy Associates' assertion that the $100,000 was not a loan but a contribution to capital may well be rendered moot when the guarantor subsequently asserts a claim against it for indemnity. At the very least, the dual litigation of these issues in the state court and the bankruptcy court is not judicially economic and potentially exposes Bio-Energy, Inc. and Bio-Energy Associates to inconsistent judgments. *See In re Metal Center, Inc., supra*, at 463.

█ Accordingly, I find that George Seybolt's claims against the individual guarantors are within this Court's jurisdiction and should be stayed until an appropriate motion for relief from stay is filed and granted by the bankruptcy court.

█ The bankruptcy court that should hear these matters and consider further the equitable grounds asserted by George Seybolt in its motion to remand is the bankruptcy court where Bio-Energy Associates' Chapter 11 proceeding is pending. *See Colarusso v. Burger King Corp.*, 35 B.R. 365 (Bkrtcy.E.D.Pa.1984) (the "home" court should be the court which determines the question of remand); *Stamm v. Rapco Foam, Inc.*, 21 B.R. 715 (Bkrtcy.W.D.Pa. 1982) (the "home" court should hear actions to lift the automatic stay as well actions to remand removed proceedings). As a conduit under the removal statute, this Court can only speculate as to the effect that this proceeding will have on Bio-Energy Associates' Chapter 11 proceedings. The equitable considerations underlying a motion to remand are best addressed by the bankruptcy court that has the entire proceeding before it.

Moreover, many of the transactions and events which comprise George Seybolt's action and the defendants' counterclaims and crossclaims occurred in Maine. In the instant case, venue is clearly proper in the District of Maine. 28 U.S.C. § 1477(a). *See* §§ 1475 and 1473.

Accordingly, Bio-Energy Associates' Motion for Change of Venue to the Northern Division of the United States Bankruptcy Court for the District of Maine is hereby ALLOWED.