804 P.2d 129

**The INDIGO COMPANY, an Arizona General Partnership, Plaintiff–Appellee,**

v.

**The CITY OF TUCSON, a Municipal Corporation, Defendant–Appellant.**

No. 1 CA–TX 90–022.

Court of Appeals of Arizona, Division 1, Department T.

Jan. 10, 1991.

Frederick S. Dean, City Atty. by Elisabeth Sotelo, Asst. City Atty., Tucson, for defendant-appellant.

## OPINION

GERBER, Presiding Judge.

The City of Tucson appeals from a judgment refunding city business privilege taxes paid under protest by the Indigo Company (Indigo). The question on appeal is whether certain construction draws received by Indigo constituted "gross income" from the business of "construction contracting" subject to taxation under Tucson Code § 19–415.

## FACTS AND PROCEDURE

Indigo is a partnership which has a general contractor's license and a City of Tucson class 15 license to do business as a construction contractor. Indigo entered into six separate development partnerships with third parties. It was the managing partner for the development partnerships. It prepared development and architectural plans and specifications for a commercial building on each parcel. Indigo obtained financing for the buildings and entered into contracts with building contractors and specialty contractors. Indigo held draws on the proceeds of the construction loans in Indigo's business checking accounts for disbursement to contractors, subcontractors, laborers and material suppliers.

When each building was completed, the development partnership that owned it entered into a long-term financing arrangement and executed promissory notes and deeds of trust. Indigo undertook day-to-day management of the completed project on behalf of the development partnership.

The City of Tucson audited Indigo for the period of April 1, 1985, through February 29, 1988. The City assessed additional privilege taxes, interest and penalties of $89,162.93. Indigo petitioned for a hearing, correction or redetermination of the assessment before the City's Director of Finance. After a hearing, the City issued a redetermined assessment in the amount of

Richards & Eisenstein by Barbara E. Fisher, Tucson, for plaintiff-appellee.

$92,311.28. Indigo paid this amount under protest and brought an action in the tax court for a refund. On cross-motions for summary judgment, the tax court ruled in favor of Indigo. The City timely appealed. We have jurisdiction pursuant to A.R.S. § 12–2101(B).

## DID THE CONSTRUCTION DRAWS CONSTITUTE GROSS INCOME?

### A. The Applicable Tucson Code Provisions

Tucson Code § 19–400(a)(1) levies "[a] privilege tax upon persons on account of their business activities, to the extent provided elsewhere in this division, to be measured by the gross income of persons, whether derived from residents of the city or not, or whether derived from within the city or from without." Section 19–415(a) imposes a two percent privilege tax on the *"gross income from the business* upon every construction contractor engaging or continuing in the business activity of construction contracting within the city."[1] (Emphasis added.) A taxpayer who engages in construction contracting is immediately liable for privilege taxes on the entire gross income from that activity.

The Tucson Code treats a taxpayer who engages in business as an "owner-builder" differently. Tucson Code § 19–100 defines an owner-builder as "an owner or lessor of real property who, by himself or by or through others, constructs or has constructed or reconstructs or has reconstructed any improvement to real property." An owner-builder selling improved real property within twenty-four months after completion of the improvement is deemed a "speculative builder," and is liable for a two percent privilege tax on the gross proceeds of sale. Tucson Code § 19–100; Reg. 19–

1. Tucson Code § 19–100 provides:
   Construction contracting refers to the activity of a construction contractor.
   Construction contractor means a person who undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck, or demolish any building, highway, road, railroad, excavation, or other structure, project,

415.1(2)(a). However, an owner-builder who retains improved real property for twenty-four months becomes liable for a two percent privilege tax on the total purchase price of any tangible personal property bought for incorporation into the improvements on the real property. Tucson Code § 19–417(a).

### B. Analysis

■ The City claims Indigo is a construction contractor under Tucson Code § 19–415. It asserts that Indigo contracted with each of the development partnerships to construct improvements on their real property. The City argues that in constructing improvements Indigo engaged in the business of construction contracting. It contends that the construction loan funds Indigo used to pay contractors, subcontractors, laborers and material suppliers for constructing the development partnerships' buildings constituted gross income taxable to Indigo.

We disagree that Indigo engaged in the business of construction contracting. Indigo had the ability to enter into construction contracts with the development partnerships, but there is no support in the record that it did. The fact that Indigo is itself a partnership does not establish that it built improvements on the development partnerships' land as their prime contractor.

■ If Indigo as a separate partnership borrowed money and used it to build improvements on its own property it would have been an owner-builder under Tucson Code § 19–100. The fact that Indigo owned the land in partnership with others does not change this result. Tucson Code Reg. 19–415.1 provides:

(1) A person performing improvements to real property is one of the following:

development or improvement to real property, or to do any part thereof. "Construction contractor" includes subcontractors, specialty contractors, prime contractors, and any person receiving consideration for the general supervision and/or coordination of such a construction project. This definition shall govern without regard to whether or not the construction contractor is acting in fulfillment of a contract.

a) An "owner-builder" when the work is performed by the owner or lessor or lessee-in-possession. . . .

. . . .

(3) The terms "owner," "lessor" and "lessee-in-possession" shall be deemed to include any authorized agent for such person.

A.R.S. § 29–206(A) defines a partnership as "an association of two or more persons to carry on *as co-owners* a business for profit." (Emphasis added.) Partners are engaged in a joint enterprise for a joint profit and are principals in every transaction. *Brown & Bigelow v. Roy,* 132 N.E.2d 755 (Ohio App.1955). Partners are agents of the partnership for the purpose of its business. A.R.S. § 29–209(A). Indigo was a partner in each development partnership. Each development partnership owned the land under development. As a partner, Indigo was an owner performing improvements to real property. It functioned as an owner-builder, not as a construction contractor. Tucson Code § 19–100; Reg. 19–415.1.

█ The loan draws Indigo received for construction purposes did not constitute taxable gross income to it. Indigo did not receive any income as a matter of personal right or entitlement.[2] In obtaining financing for construction, Indigo was carrying on development partnership business. The construction loan proceeds it obtained were "acquired . . . on account of" each development partnership and became development partnership property. A.R.S. § 29–208(A).

As a partner in each development partnership, Indigo could possess and use the construction loan proceeds for partnership purposes. *See* A.R.S. §§ 29–209(A); 29–225(B)(1). Indigo had no individual ownership interest in the construction loan proceeds and could not use those proceeds

other than for the sole benefit of each development partnership. *See* A.R.S. § 29–225; *Prince v. Harting,* 177 Cal. App.2d 720, 2 Cal.Rptr. 545 (1960).

When Indigo held construction loan proceeds in its account, it did so for the development partnership and was liable to repay the loan. It used those proceeds to pay the contractors, laborers and material suppliers to satisfy development partnership obligations. The construction loan proceeds did not constitute gross income to Indigo. *Cf. Ebasco Services Inc. v. Arizona State Tax Commission,* 105 Ariz. 94, 459 P.2d 719 (1969) (specialized equipment that construction contractor bought as purchasing agent for project owner did not become a "gross receipt" to the contractor when received for installation in the project).

█ The City argues that Indigo's accounting records did not identify the construction loan proceeds as belonging to a development partnership and therefore Indigo did not use those funds as a partner or agent of the development partnership. We disagree. The construction loans were obligations of the development partnerships and the loan proceeds were partnership property. As a partner in a development partnership, Indigo had the right to possess and use the proceeds for partnership purposes. A.R.S. §§ 29–209(A); 29–225(B)(1). Failure to segregate the funds in its accounting procedures did not transform them into Indigo's.

█ The City also argues that Indigo was not a partner or agent of the development partnerships because it did not identify itself as such in building permit applications or in contracts with subcontractors and material suppliers. Under the common law, where a person contracts with an authorized agent or partner acting on behalf of an undisclosed principal or secret part-

---

**2.** Tucson Code § 19–200 provides in part:

(a) Gross income includes:

(1) The value proceeding or accruing from the sale of property, the providing of service, or both.

(2) The total amount of the sale, lease, license for use or rental price at the time of such sale, rental, lease or license.

(3) All receipts, cash, credits, barter, exchange, reduction of or forgiveness of indebtedness, and property of every kind or nature derived from a sale, lease, license for use, rental or other taxable activity.

(4) All other receipts whether payment is advanced prior to, contemporaneous with, or deferred in whole or in part subsequent to the activity or transaction.

**600**

ner, both are bound by the contract. *See* Restatement (Second) of Agency § 302 (1958); *Seybolt v. Bio–Energy of Lincoln, Inc.,* 38 B.R. 123 (D.Mass.1984). We know of no legal reason why Indigo could not engage in development partnership business as a partner in its own name.

■ The City also asserts that Indigo used its contracting license to purchase construction materials and supplies free of retail sales taxes. It contends that Indigo should therefore be deemed to have been acting on its own account as a construction contractor. The City does not cite to anything in the record demonstrating that Indigo actually bought materials and supplies free of retail sales taxes. The nonpayment of sales taxes would not establish that Indigo bought the materials and supplies for itself and not as the development partnerships' managing partner. In any event, any of the development partnerships retaining improved real properties for twenty-four months after substantial completion are liable for the city owner-builder tax. Tucson Code § 19–417(a)(2).

## CONCLUSION

Indigo did not act as a construction contractor but as an owner-builder in overseeing the construction of the buildings on the development partnerships' land. Based on this holding, the construction draws are not gross income to Indigo under Tucson Code § 19–415.

The judgment is affirmed.

SHELLEY and BROOKS, JJ., concur.